Matthew M. Levy, J.
The tenant entered into a lease covering a furnished co-operative apartment in Manhattan. The lease, dated September 20, 1954, was for a two-year period beginning October 1, 1954, and provided for a monthly rental of $115. The tenant later made application before the State Rent Administrator, claiming overcharge in rent. The Administrator found that the apartment was still subject to rent control and that the maximum rent of the apartment, furnished, was $65. The landlord thereupon instituted an article 78 proceeding, in which he submitted additional proof not theretofore before the Administrator, and the latter requested and obtained a remand order from the court. Thereafter, decontrol was found by the Administrator, and in the instant article 78 proceeding, the tenant seeks review of that final order.
The problem is legally and factually resolved on a proper interpretation of subdivision 11 of section 9 of the State Rent and Eviction Regulations, which, so far as pertinent, is as follows:
“ Section 9. Housing accommodations not subject to rent control. These Regulations shall not apply to the following:
“ 11. Housing accommodations which are rented after April 1, 1953 and have been continuously occupied by the owner thereof for a period of one year prior to the date of renting; # # # >> *535 (See, also, State Residential Rent Law, § 2, subd. 2, par. [h]; L. 1946, ch. 274, as amd.)
In issue are (1) the challenge by the petitioner-tenant to the claim of ownership of the co-operative apartment by one Rhoda H. Teperman, (2) whether she occupied the apartment, as claimed by her, and (3) whether she was in continuous occupancy thereof for the period of one year- — so as to enable the landlord to invoke decontrol under the quoted regulation.
The issue on the question of ownership arose upon a dispute as to the identity of the owner of the apartment. The facts are recited in full at pages 3 to 6 of the Administrator’s opinion. It is needless to repeat them here. There is abundant testimony and documentary proof that in 1950 Rhoda Teperman did buy the subject apartment from the prior owner through the intervention and with the approval of the co-operative corporation, and that she remains the owner thereof. Although there is some conflicting evidence, the Administrator’s determination is amply supported in the record.
On the question of occupancy, the facts are set forth in the Administrator’s opinion at pages 6 through 8, and I find that the evidence here, too, is adequate to support the Administrator’s determination that Rhoda Teperman occupied the subject apartment from July, 1952 to July, 1954. Constant physical presence is not a sine qua non to occupancy (cf. Billig v. Nelson Properties, 166 Misc. 301). It was possible for her to have “ occupied ” both the subject apartment and her parents’ home at Belle Harbor at the same time. I think the reasons given by her for that situation are plausible enough to avoid disturbance of the Administrator’s finding in that regard.
On the third issue, it" must be observed that none of the three briefs before me — submitted by the petitioner-tenant, the respondent-administrator and the intervenor-landlord — argues the law, or, indeed, raises the point here to be considered. There is ample evidence to support the finding — if, in fact, it is not practically admitted — that Rhoda Teperman vacated the apartment in July, 1954, that from then to October, 1954, she was with her parents in Queens, that then she went to Europe, that on her return she remained in Queens to November, 1955, and that the apartment was vacant from July, 1954, to September, 1954, when it was rented to the present petitioner, effective October 1, 1954. On the question, therefore, as to whether this housing accommodation has ‘ ‘ been continuously occupied by the owner thereof for a period of one year prior to the date of renting ” (State Rent and Eviction Regulations, § 9, *536 subd. 11), the issue is first presented as to whether the regulation should read as though the word “ immediately ” or the words “ at any time ” appeared between “ year ” and “ prior ”.
No doubt, the regulation involved might easily have been worded more clearly. Two instances of draftsmanship more explicit come to mind — in matters of a similar nature. The language used in subdivision 3 of section 1165-a of the Civil Practice Act, with reference to the requirements for the institution of certain matrimonial actions in this State, indicates that some such jurisdictional basis is found where, among other things, one of the parties “ has been a resident ” of the State ‘ ‘ for at least one year continuously at any time prior to the commencement of the action” (italics supplied). And as part of the very regulation in question (§ 9, subd. 11), the Administrator provided that decontrol “ shall not apply where the owner acquired possession of the housing accommodation after the issuance of a certificate of eviction pursuant to these Regulations within the two year period immediately preceding the date of such renting ” (italics supplied).
I think it is appropriate to note at this point that, in my view, the inclusion of the word “ immediately ” in the latter portion of the regulation makes strikingly significant its omission in that part of the section that is here involved. But whether or not that be. conclusive, it is not necessary that a regulation such as that having the present subject-matter be so plain and unambiguous that he who runs may be able to read it and conclude (while on the run) that there is no possible doubt whatsoever as to its meaning. For, in arriving at his determination, the Administrator necessarily (although not expressly) construed the regulation to mean that the occupancy need not “ immediately ” precede the renting, and that it may be at any time before a date of renting occurring after April 1, 1953, provided that the occupancy was continuous and provided further that the period of such occupancy was for one year. If the regulation is susceptible of two meanings, absent some clear indication by the Legislature of a contrary intent, the Administrator’s interpretation should stand (Matter of Luxenberg v. Stichman, 208 Misc. 706, 710).
The legislative intent — insofar as I can gather it — would tend to warrant the facilitation of decontrol in the instant circumstances. I believe it to have been the intent of the Legislature— in the light of the shortage of housing accommodations — to encourage landlords occupying their own dwellings to place these residences upon the rental market when in a position to do so. A landlord in occupancy of his own premises may *537 not be persuaded — unless there be decontrol — to make his own apartment available to others. It would reasonably implement one of the prime purposes of the emergency rent laws — to expand the area of available housing accommodations — if the landlord were furnished an incentive not to continue owner-occupancy or not to effectuate or maintain a vacancy; and the economic fact of life has made it clear that decontrol is such an incentive.
Since there is factual basis in the record for the Administrator’s finding that the subject apartment was continuously occupied by the owner thereof for a period of one year (State Rent and Eviction Regulations, § 9, subd. 11) before September 20, 1954 (when the apartment was rented to the petitioner) and since there is legal basis for his holding that the regulation does not require such occupancy to have been immediately prior to the date of renting, it cannot be said that his determination was arbitrary, capricious or unreasonable (Matter of Servedio v. Abrams, 208 Misc. 397, 402; Matter of Feinberg v. Abrams, 208 Misc. 568).
The motion is denied and the petition is dismissed. Order signed.