Louis Peck, J.
The landlord initates this summary proceeding seeking a final order of eviction on the grounds of nonpayment of rent. The landlord contends that the subject housing accommodation occupied by the tenant at 1323 Bronx River Avenue, Bronx, New York, is decontrolled space, and, therefore, having served a 30-day notice upon the tenant to vacate or pay the increased rental of $100 instead of the former $45 per month, such a final order of eviction is proper. The tenant opposes the petition on the ground specifically set forth in her pleadings contending among other things that the subject space is registered space, a certificate of registration fixing the maximum rent having been filed on November 21, 1943, and filed with the local rent office; that the said space is not decontrolled as alleged in the landlord’s petition, and that there is no record of a certificate of decontrol ever having been filed with the Temporary State Housing Rent Commission. To better understand the position taken by the tenant, the following background is essential.
*957 The within tenant, Ida Yulke, has resided continuously at premises 1323 Bronx River Avenue, Bronx, New York, since March, 1930. The building, a four-family multiple dwelling, was owned by the Yulshap Realty Corp. and was so owned by the said corporation up to July 7, 1954, at which time the corporation conveyed the premises to the within petitioner. Abraham Yulke now deceased, the husband of Ida Yulke, was a 50% stockholder of the Yulshap Realty Corp. The remaining 50% of the stock was held by one Isac Shapiro and his daughter; Mr. Shapiro and his daughter not being related to the Yulkes.
At the time of the conveyance of the premises by the Yulshap Realty Corp., to the petitioners herein, the Yulkes were still tenants at the afore-mentioned premises, occupying apartment No. 2 thereof, and their fixed rent, as adjusted, was $34.50. Under the contract of sale which was executed by Ida Yulke on behalf of the seller corporation and in a rider annexed thereto, and by paragraph 12 thereof, it was agreed that the Yulkes as individuals would continue to remain in possession of the aforementioned apartment, it being stipulated further that instead of $34.50, the rent should be $45 per month.
There are certain points raised by the petitioner concerning representations made by the corporation in its contract. The tenant contends that these are not material or pertinent to the prime issue of whether or not the subject space is controlled space.
Insofar as are here pertinent, the following statutes are under examination: The State Residential Rent Law (L. 1946, ch. 274, as amd., § 2, subd. 2, par. [h]): “housing accommodations which are rented after April first, nineteen hundred fifty-three, and have been continuously occupied by the owner thereof for a period of one year prior to the date of renting ’ ’ and, to the same effect, subdivision 11 of section 9 of the State Rent and Eviction Regulations, “Housing accommodations not subject to rent control * * * (h)ousing accommodations which are rented after April 1, 1953 and have been continuously occupied by the owner thereof for a period of one year prior to the date of renting ”.
Section 42 of the State Rent and Eviction Regulations: ‘‘ The landlord of a housing accommodation specified in paragraphs 11 12, 13, 14 and 16 of Section 9 of these Regulations shall file a report of such decontrol upon forms prescribed by the Administrator within 30 days following the date of first rental of such accommodations after decontrol ”. (Italics ours.)
*958 The court finds that the tenant has never been the owner of the subject premises within the contemplation of the statutes (supra).
(1) The evidence is clear that the premises wherein the housing accommodation is located was always owned by a corporate entity; that the Yulshap Realty Gorp. was the owner of the premises from March, 1930 until the time of conveyance to the within petitioner grantee on July 7, 1954.
Ida Yulke and her husband Abraham Yulke, now deceased, occupied apartment No. 2 in the said premises as tenant, it being merely incidental that the tenant was a 50% stockholder of the grantor corporation.
In Matter of Hennessey Place Corp. v. Weaver (Justice Lupiano) unanimously affirmed by the Appellate Division, First Department (3 A D 2d 739), the Rent Administrator refused to decontrol an apartment under section 2 (subd. 2, par. [h]; to the same effect, State Rent & Eviction Regulations, § 9, subd. 11, supra). Decontrol was denied despite the fact that the housing accommodation had been occupied for over one year after April 1,1953 by the sole stockholder of a corporate owner, it being held that even a sole stockholder of a corporate entity cannot be deemed to be an owner of the premises for the purposes of the act.
(2) In the instant case there is no evidence that the grantor corporation used the housing accommodations for office space for its business purposes. There is no question that the former grantor corporation was the owner and the Yulkes the tenant, there therefore being no owner-occupant. While the court would not hestitate to thrust aside the corporate veil in the presence of fraud, deceit, chicanery or sharp dealing, the facts and record are devoid of any such practice on the part of the tenant. In addition, the Rent Administrator and the courts for the purposes of the statute have declined to pierce the corporate entity. (See Matter of Hennessey Place Corp. v. Weaver, supra.)
(3) Further, the court finds that the petitioner in order to prevail on the issue of decontrol must show, in addition to owner occupancy, a vacating of the space by the former owner-occupant and a rerenting.
Assuming only for the purposes of this discussion that the Yulkes were the owners, but not admitting the same, the petitioner has not established, first, a vacating of the housing accommodations, and secondly, a rerenting.
In the very language of the contract and the rider annexed thereto, and in paragraph 12 thereof, it is stated: “ Purchaser *959 agrees to let the seller remain in apartment No. 2 of said premises ”. (Italics- ours.)
The only change in status as to the Yulkes was that, instead of paying the registered adjusted rent of $34.50, the grantee petitioner agreed to take $45 per month.
In the following line of cases, in each instance, the facts show that the owner-occupant vacated after occupancy of one year and/or that there has been a rerenting* to a third party before the new owner was allowed to succeed in his application for decontrol. (See Matter of Williams v. McGoldrick, 137 N. Y. S. 2d 160,161; Matter of Davis v. Weaver, 1 A D 2d 975; Matter of Woolcock v. Weaver, 2 A D 2d 864; Matter of Lang v. Weaver, 7 Misc 2d 533.)
(4) And not of least importance, the petitioner failed to file a certificate of decontrol pursuant to section 42 of the Rent and Eviction Regulations of the Temporary State Housing Rent Commission.
The regulation is mandatory. There is no hesitancy in the wording. A landlord, such as the petitioner herein, must comply. Section 42 (supra) makes specific reference to section 9 (subd. 11), the applicability of this latter section being before the court, and stating ‘ ‘ The landlord of a housing accommodation specified in paragraphs 11 * * * of Section 9 of these Regulations shall file a report of such decontrol ”. (Italics ours.)
Especially, such filing of a certificate of decontrol is necessary when there is on record with the local rent office a notice of maximum rent filed for the subject housing* accommodations.
Although there may appear to be in the contract executed by the grantor Yulshap Realty Corp. and the grantee petitioner a misdescription or mislabeling of the parties, the fact remains that a corporate entity was the owner and the individual Yulkes, though stockholders, were the tenants contemplated to be continued in occupancy of the subject housing accommodations. Therefore, the subject space was not occupied within the purview of the statute; the petitioner has failed to show that he has complied with section 42 (supra), and there has been a further lack of proof that all the conditions contemplated by section 9 (subd. 11) have been met. Accordingly, the petition is dismissed and a final order is awarded in favor of the tenant.